1  Ronald Cupp
   150 Raley Town Center Ste 2512
2  Rohnert Park, California [94928]
   Telephone: (707) 318-9929
3  Plaintiff in Pro Se

4

**FILED**

JUL 26 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

8            **UNITED STATES DISTRICT COURT**

9           **NORTHERN DISTRICT OF CALIFORNIA**

10

11  Ronald Cupp                          )   CASE NO:

12        Plaintiff,                     )   **VERIFIED COMPLAINT FOR**
                                         )   **DAMAGES**
13        vs.                            )   **FOR CIVIL RIGHTS VIOLATIONS**
                                         )
14  COUNTY OF SONOMA;                    )   **COMPENSATORY DAMAGES**
15  ANDREW SMITH, individually.          )   **DECLARATORY RELIEF**
    TODD HOFFMAN, individually.          )   **INJUNCTIVE RELIEF**
16  TYRA HARRINGTON, individually.       )   **PUNITIVE DAMAGES**
    MARK FRANCESCHI, individually.       )
17  TENNIS WICK, individually.           )
18  MICHAEL KING, individually.          )   **DEMAND FOR TRIAL BY JURY**
    ANTHONY CINQUINI, individually.      )
19  CINQUINI & PASSARINO, INC.           )
    DOES 1-20                            )
20                                       )
21        Defendants.                    )
                                         )
22  ─────────────────────────────────────)

23         **INTRODUCTION AND OPENING STATEMENT**

24  Plaintiff Ronald Cupp (hereinafter "CUPP"), complains as follows:

25  This is a civil rights action arising from unconstitutional and unlawful actions taken by

26  Sonoma County PRMD and its Code Enforcement Officers towards "CUPP" and landowners.

27

28

RECEIVED

2022 JUL 25 P 3: 37

CLERK, US DISTRICT COURT
NO. DIST. OF CA.

42T

In May 2019 CUPP filed a complaint against same state actors, same property, same causes of action; that case CV 20-3456 PJH. During the continuing course of events, same state actors continued to violate CUPP's individual and property rights. CUPP had attempted to add these new damages as new counts and Does in the above case, but Honorable Judge Hamilton instructed CUPP he was limited to the events of 'that case' of February 15, 2019, in that case, and any of the new damages and actions by state actors would have to be a new complaint. This is that new complaint for continuing damages caused by unlawful actions by the same state actors.

## I.      JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to, and jurisdiction of this Court arises under Title 42 USC sections §1983, §1985, §1986 and §1988, and the Civil Rights Act of 1870; Article VI, Section 10 of the California Constitution; Civil Code sections 51.7 & 52.1; Code of Civil Procedure section 88; and Government Code section 12960, and invokes the jurisdiction of this court pursuant to Title 28 USC Section §1343 (A)(3)(4), Section §1331 (Federal Question), and pursuant to the 4th and 14th Amendment, and supplemental jurisdiction exists for the state law claims pursuant to 28 USC §1367 , Jurisdiction arises under Cal. Civ. Pro. §410.10.  At all times relevant, all of the causes of action were committed within the geographical jurisdiction of this court.

2.      Venue is proper pursuant to 28 U.S.C. §1391b and Cal. Civ. Pro. §395(a). Venue in this District is proper in that the Plaintiff resides here, the Defendants are employed and transact business here, and the conduct complained of occurred here.

## II.      PARTIES

3.    Plaintiff Ronald Cupp, herein after "CUPP" or "PLAINITFF", at all times relevant herein, lived at 4640 Arlington Avenue, Santa Rosa, Sonoma County, California; and has lived in Sonoma County since 1987. Mailing address is 150 Raley Town Center, Suite 2512, Rohnert Park, CA 94928.

4.    Defendant Todd Hoffman, hereinafter "HOFFMAN", Defendant Andrew Smith, hereinafter 'SMITH", Defendant Tyra Harrington, hereinafter "HARRINGTON",  Defendant Mark Franceschi, hereinafter "FRANCESCHI",  Defendant Tennis Wick, hereinafter 'WICK", at all times relevant to this complaint was the Code Enforcers and Inspectors employed by the County of Sonoma, California; and is being sued individually and in their official capacities. Be it known that "HOFFMAN", "SMITH", "HARRINGTON" and others comprise the "CODE ENFORCEMENT DIVISION" and are all ***ex-police officers or sheriff*** of many substantial years, indicating that their knowledge and actions are far more egregious knowing that they know the rules and laws that "CUPP" complains of here.

5.    Defendant Michael King, Deputy Sonoma County Counsel, herein after "KING", at all times relevant to this compliant was the Deputy Sonoma County Counsel employed by the County of Sonoma, California; and is being sued individually and in his official capacity.

6.    Defendant Anthony Cinquini, an individual Independent Subcontractor or hire, herein after "CINQUINI", at all times relevant to this compliant was Independent Subcontractor for hire by the Permit & Resource Management Director or his employees, employed by the County of Sonoma, California; and is being sued individually.

7.    Defendant CINQUINI & PASSARINO, INC, a Person hired by Sonoma County Permit & Resource Management Director, or his charges, herein after "CINQUINI & PASSARINO", at all times relevant to this compliant was the Permit & Resource Management

Subcontractor employed by the County of Sonoma, California; and is being sued in it official capacity.

8.    Defendant County of Sonoma California, herein after "COUNTY", is a quasi-judicial corporation within the State of California, located at 575 Administration Drive, Santa Rosa, CA 95403. At all times relevant to this complaint Defendant "COUNTY" either directly or indirectly trained, controlled, made policy for, employed, supervised, compensated, enriched, or rewarded and ratified some or all of the other defendants for their actions on AND AFTER February 15, 2019, and thereafter. The "COUNTY" is being sued as a person.

9.    At all times relevant hereto, defendants "DOES 1-20" are unknown persons who have either created policy or custom and managed, ordered, controlled, or neglected to restrain or correct the Defendants herein from committing said civil rights violations complained herein. These Defendants will be identified as their names and addresses become known to the CUPP.

10.    Each of the named defendants collectively known as Defendants caused and is responsible for the below-described unlawful conduct and resulting injuries by, among other things: personally participating in the unlawful conduct or acting jointly or conspiring with others who did so by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to "CUPPS" rights; and by ratifying the unlawful conduct that occurred by agents and officers under their discretion and control, including failing to take remedial steps or disciplinary action.

11.    In doing the acts alleged herein, defendants and each of them were on duty as PRMD CODE ENFORCEMENT OFFICERS, in uniform, armed, with badges and bad attitudes, and, thus, were acting within the scope and course of their employment with the "COUNTY".

12.     In doing the acts alleged herein, defendants and each of them had a duty to protect the health and safety of "CUPP", his property, and they failed to exercise due care in the enforcement of that duty.

13.     In doing the acts alleged herein, defendants and each of them acted as the agent, servant, employee, partner, joint-venturer, co-conspirator and/or in concert with each of said other defendants; and in engaging in the conduct hereinafter alleged, were acting with the permission, knowledge, consent, and ratification of their co-defendants, and each of them.

### III.     PLAIN SIMPLE STATEMENT OF FACTS

14.     In May 2019 "CUPP" filed a complaint against same defendants, in this same court, CV 20-3456 PJH, regarding the same and similar causes of action.

15.     The first case it is already determined that the property is enclosed on all sides with fencing, buildings and trees, not visible from the street or outside of the property, clearly "CUPP" had established actual expectation of privacy that society recognizes as reasonable, both subjectively and objectively, and that Curtilage is established. "CUPPS" property can hardly be described as an 'open field' or be able to use 'plain view' by any lay understanding of the term and, most of it is not visible from the ground.

16.     In violation of both the warrant and due process requirements of the state and federal constitutions, as further described in the following detailed facts and attached declarations, defendants trespassed and performed unreasonable searches upon the property and residence of "CUPP", and others, as a pattern and practice.

17.     On 6-12-19 "SMITH" by "HARRINGTON" caused to be filed Notice of Abatement Proceedings (liens) on "CUPP"S property before and without giving "CUPP" due

process and a hearing as required by code, "COUNTY"s own citations, Administrative

Procedures Act, documents #'s 2019039697 and 2019039721, thereby slandering "CUPP"s title.

18.     On or about 3-27-20 "CINQUINI", "CINQUINI & PASSARINO", and on

information and belief directed by "HOFFMAN" or "HARRINGTON" trespassed and performed

an unreasonable search by operating a drone to fly over "CUPPS" curtilage, fences, house(s) and

property at 4640 Arlington Avenue (all references made to this property unless otherwise noted,

"CUPP" has owned the property since 1989) and took videos/pictures.

19.     This was done without "CUPPS" permission, or a warrant and in secret, and not

discovered by "CUPP" until these images were used and submitted by "HOFFMAN" as an

intentional misleading statement to a Sonoma County Superior Court Judge to obtain an

inspection warrant. "HOFFMAN" created his Affidavit of Probable Cause on or about 7-12-20,

Obtained an Inspection Warrant on or about 7-20-20, and served the "invalid inspection warrant"

with "HARRINGTON" and "SMITH" and others on July 30, 2020.  (CASE SCV266746

inspection warrant).

20.     As Defendants pattern and practice, CASE SCV266746 was IMMEDIATELY

closed out so there could be no challenges to the warrant nor affidavit of probable cause used to

obtain the inspection warrant.

21.     "CUPP" discovered through an unrelated criminal case that "WICK",

"HARRINGTON", "HOFFMAN" and "COUNTY" have made 'private' agreements and

contracts to use 'CINQUINI", "CINQUINI & PASSARINO" to secretly use their unmanned

aerial aircraft, hereinafter "DRONE", fly over people's property and houses to document for the

"COUNTY" what they want without landowners permission or knowledge or public

documentation.

22.     On information and belief, there has been no required public bidding for these services (REQUIRED BY LAW) and although they execute a contract for the unreasonable search and trespass, it is done in private and in secrecy.

23.     These 'DRONES" have thermal imagery, High-Definition Video and Telephoto Imagery capabilities. They are not like a flying over fixed wing aircraft nor a helicopter that is flying over an open field looking for what is in plain view. These hover, can spin in place while hovering, zoom in and out with video and camera capabilities, and scare or threaten occupants outside of houses and inside of houses, around your 'yards' and in essence, their 'protected private space'.

24.     Just because technology develops new and innovative ways in which a person's privacy can be violated should not dictate whether that person's legitimate expectation of privacy should or could be violated, and whether society should continue to recognize that expectation as reasonable.

25.     Low-altitude, unmanned, specifically targeted drone surveillance of "CUPPS" private individual's property is qualitatively different from the kinds of human-operated aircraft overflights permitted by Ciraolo of a fixed wing aircraft at 1000 ft and Riley's use of a helicopter at 400 ft. Drone surveillance of this nature intrudes into "CUPPS" reasonable expectations of privacy, so such surveillance implicates the Fourth Amendment and is illegal without a warrant or a traditional exception to the warrant requirement. A drone is therefore necessarily more intrusive into "CUPPS" private space than would be an airplane overflight.

26.     In other words, drones are intrinsically more targeted in nature than airplanes and much easier to deploy. Also, given their maneuverability, speed, and stealth, drones are—like thermal imaging devices—capable of drastically exceeding the kind of human limitations that

would have been expected by the Framers not just in degree, but in kind. Drones fly below what is usually considered public or navigable airspace. Consequently, flying them at legal altitudes over another person's property without permission or a warrant would reasonably be expected to constitute a trespass.

27.    In addition, upon discussion with several people who have experienced the "COUNTY'S" "DRONE" flyover experience, all have experienced low flying, intrusive, unwelcome threatening scaring experiences. (EXHIBIT A attached and incorporated by reference– A.1 STAVRINIDES, A.2 PETERSON, A.3 MUSGROVE, A.4 BUSENBARK, A.5 AVATAR, A.6 CRUZ).

28.    California legislature has already outlined that drones may not be used to violate a civilians reasonable expectation of privacy (Civil Code 1708.8). So, because they are government, is it right and damages do not apply?

29.    The" COUNTY" and all defendants, with the ***INTENT as government agents*** to' spy and look over peoples fences surrounding their houses, breach the house curtilage and private areas; these are performed routinely and as a pattern and practice of just 'lets see what so and so is doing at their house and property' and then we will decide if they have broken some rule or statute. Supreme Court ruled in Florida v. Jardines (2013) 569 U.S. 1  that this is not OK.

30.    There is no more an invasion of privacy and unreasonable search than this. If the court does not think so, please supply me with your address and I will have someone fly a "DRONE" over your house and see what you or your wife and your children are doing in the pool in your backyard, at my convenience, without telling you. And just because you did not see the DRONE" it is OK?

31.     In this instant action, Defendants did not even need this warrantless surveillance and it was totally unnecessary, as due to current case CV 20-3456 PJH all was needed was for "KING" or "COUNTY" Defendants to request an 'on site inspection' through available discovery. And the quantum of evidence necessary to establish probable cause to conduct an administrative inspection is more than "none," but less than what might be required to execute a criminal search warrant; Camara  387 U.S. at 528-539, 87 S.Ct. 1727. No "DRONE" was needed, but it is the Defendants pattern and practice that they do so.

32.     Short of outright 'fishing expeditions', if "COUNTY", "WICK", "KING", "SMITH", "HOFFMAN",  "HARRINGTON", or others has any kind of nontrivial and objective reason to believe there would be value in flying a drone over "CUPPS" property, as Defendants did here, then I trust the Defendants would probably be able to persuade a court to grant a warrant or equivalent permission to conduct a search without the violation of constitutional protections. (Camera). Inspection warrant 1822.56 is a very low bar to obtain.

33.     Only the work product (pictures and videos) are used in public as exhibits or attachments to documents and affidavits submitted to Judges and Courts, ***with deceptive intent.*** They use the deceptive practices to get past their probable cause.

34.     As a pattern and practice, Defendants mislead and hide their actions in the Affidavits and Courts. As an example, in my case, SCV266746 in the Affidavit of Probable cause, "HOFFMAN" states the Exhibits are from Google Earth, and then states, "upon further examination of satellite imagery" (***the mislead***), there are drone pictures taken without a warrant to prove the facts he wants to submit included as Exhibits. In my case "HOFFMAN" stated "USING AERIAL IMAGERY OBTAINED ON MARCH 27, 2020 – E1 & E2" which were

"DRONE" images taken of my property (misleading the Judge to think it was still Google Earth Images).

35.     This is a pattern and practice by defendants and "COUNTY", and other PRMD employees use the *EXACT TECHNIQUE, LANGUAGE, AFFIDAVIT OF PROBABLE CAUSE, AND PRESENTATION* in applying for Inspection Warrants, to Sonoma County Courts and Judges.

36.     As an additional pattern and practice Defendants do this so much, the misleading Affidavits of Probable Cause are form letter type they cut and paste, as mine had wrong information included and submitted. (CV 20-3456 PJH DOC 25 AND 25.1 MISQUOTE JUDGE DEMAYO)

37.     How is the Judge issuing an Inspection Warrant to know, as they were misled by defendants thinking it is Google Earth? The Judge is not told this was performed by a "DRONE", on a different date, in secrecy, without a warrant of any kind (4th amendment or Inspection Warrant CCP 1822.56) and submitted as an Exhibit with the Google Earth photos together.

38.     The Defendants feel the drone is 'legal' and they use it all the time with impunity, stating it is legal. Who is going to challenge them? If it is, why do they hide their use and their actions? Why don't they put in the Affidavit of Probable Cause, stating "we flew a "DRONE" over the property on this date, without a warrant, permission, exigent circumstances, or any other protections our society is reasonably ready to accept?" Defendants' actions 'in hiding' this information speaks for itself.

39.     Our society is not ready to accept this type of conduct or actions, and we even wrote Civil Code 1708.8 to discourage and punish civilians and the people who do so. Just

because they are Government agents, does that make it OK? I think not, and thing the Framers would agree.

40.    As a matter of information "HARRINGTON" wrote a County Code for "DRONES" , 7-0 Standard Operating Procedures on the Use of Unmanned Aircraft Systems (UAS) 9-22-17 approved by "WICK", her boss and department head and  reviewed by Deputy County Counsel, Holly Rickett. "COUNTY" uses it when they want to 'back up' their 'secret spying on people's houses'.

41.    "COUNTY" does not have the authority to promulgate Policies, Procedures or Contracts authorizing Nonconsensual Inspections of Private Property Absent an Administrative warrant. Article 11, Section 7 of the California Constitution and Government Code section 37100 prohibit the enactment of municipal laws that conflict with the general laws of the State.

42.    The Defendants have every right to get a warrant, and they know how, as they know it is laid out in Camara v. Municipal Court (1967) 387 U.S. 523 that says if they want an inspection warrant, all they have to do is request one if they have probable cause. They do not get a warrant.  Why? *This is intentional and shows mens rea.*

43.    On 7-30-20 "CUPP" received a call from "HARRINGTON" at 9:30 a.m., stating that they had an inspection warrant, and would be "coming in". I informed her I was at work and was not available to let them in. She informed me that they did not have to give me notice and were coming in anyway. Of course 'HOFFMAN" put into the Inspection Warrant request, how dangerous I was, and that if they gave me notice as called for in 1822.50, I could remove or destroy evidence. Yes, busted doors and lots of damage. And Yes again, based on "HOFFMAN" affidavit of probable cause using the "DRONE" pictures, misleading the Superior Court Judge to give him the Inspection Warrant.

44.     On 7-31-20 "CUPP" filed an EX PARTE APPLICATION FOR A TRO AND MOTION FOR PRELIM INJUNCTION. (20-03456 PJH DOC 20) "CUPP" was afraid that Defendants would cut off power to the property as they have done so many times before to others to control landowners.

45.     On 7-31-20 Judge Hamilton presiding Judge in 20-03456 PJH DOC 21, DENIED "CUPP" MOTION FOR TRO, stating "plaintiff fails to identify any specific fact that clearly shows that immediate and irreparable injury would result to him during the brief period that defendants would have to oppose his motion." And Judge Hamilton continues "That said, to the extent plaintiff relies upon the possibility that defendants might direct third-party PG&E to "shut off" his electricity, Dkt. 20 at 7, the court **ORDERS** defendants to refrain from issuing any such direction until it has resolved the instant motion."

46.     On 8-4-20 under Defendants email request, PGE came out and took the two electrical meters, and the gas meter. Not only for the purported dangerous barns (commercial meter), but took the house meter (residential meter) which was not a hazard or danger to any person or property and is 50 yards from the 'dangerous' barns. This was done intentionally. Same for removal of the gas meter for the house.

47.     Judge Hamilton has never been informed, to this day, that defendants did in fact have PGE remove not only the purported dangerous Commercial meter, but also the safe house Residential meter, and the gas meter.

48.     "CUPP" went to PGE 3 times, was told that PGE would turn power back on upon instructions and an order from "COUNTY". "CUPP" heard from defendants and "KING" that they did not violate the order and that a request to not shut off the power was sent (email) after Hamilton's order. But ooops, there was a mistake.

49.     "CUPP" emailed and talked to "KING", and talked to him on the phone, who said he would NOT AUHTORIZE PGE to restore power as the Judge denied the TRO and that my property was a safety hazard.

50.     On 9-17-20 "CUPP" through his attorney Eric Young filed a Public Records Act request directed to "WICK", department head. This was to understand data and facts from PRMD on their operations on Inspection Warrants, Citations written, Appeals lodged by Homeowners, Building Code Violations, Drone or surveillance technology. The PRA request has been ignored, not denied, but ignored. "COUNTY" and defendants don't want to account for their actions or be responsible for how they operate. What they don't show, you can't call them on it.

51.     In December 2020 and January 2021 "CUPP" was given an 'Administrative Hearing regarding the Citations issued by "SMITH" and "HOFFMAN", this hearing was run by "FRANCESCHI", who does not have an oath of office as required by Federal and California Constitutions and California Government Code. "CUPP" had objected to this, but the 'hearing officer' stated it was OK, he would allow it.  "CUPP" has complained to "COUNTY", hearing officers, and others, to no avail. "COUNTY" is aware that "FRANCESCHI" does not have the required oath of office.

52.     The hearing(s) were conducted with the data obtained from "HOFFMAN" based on his misleading Affidavit of Probable cause used to get the Inspection Warrant.

53.     On 4-15-21 "CUPP" and "KING" had settlement conference on CV 20-03456 PJH. At that hearing "KING" represented to the Court (Hamilton) that this was a "frivolous complaint and that "SMITH" had never entered the property, only went to the fence/gate, and

talked to a person through the gate, took pictures through the gate, and never entered the property once".

54.    "CUPP" knew this was not factual or true, and that the Court (Hamilton) based her rulings on this misrepresentation(s). "CUPP" tried to get a record of this as he knew "SMITH" had in fact trespassed and performed an unreasonable search by breaching the curtilage at least twice, once through the fence and again through a gate. "CUPP" applied to the court CV 20-03456 PJH DOC 65 to substantiate this, but the Court did not have written or audio of our hearing.  Through discovery, "KING" eventually submitted pictures "SMITH" took while ON THE PROPERTY and admitting that he was in fact on the property, and that he had entered thru the fence opening and the gate. Judge Hamilton has not been made aware of this.

55.    On 7-22-21, "SMITH" stated that at deposition "HARRINGTON" had changed PRMD procedure to remove any notices to landowners and instructed him to go straight to penalties and fines, write citations and file abatement liens. This is a pattern and practice from Management to violate due process.

56.    9-17-21 "CUPP" and Defendants "COUNTY" and "KING" were having discovery disputes, went to Judge Hamilton. 20-03456 PJH, DOC 68, 72, Hamilton ordered Defendants to submit to "CUPP" Discovery with meta data, and privilege log. "COUNTY" and "KING" never complied with this order. Again Judge Hamilton has not been made aware of this.

57.    On 1-19-22 Young ("CUPPS" attorney) wrote email to "KING" requesting power be restored. "CUPP" had learned from PRMD that the order from "COUNTY" to restore power would have to come from County Counsel Office, presumably "KING". On 1-28-22 Young again wrote to "KING" (because of no response) regarding PGE not being instructed to reinstate power to the property. "KING" thought request for assistance was a 'threat' from Young.

58.     On 2-23-22 Judge Hamilton in CV20-03456 PJH, DOC 87 issued her order from the Defendants Motion for Summary Judgement (DOC 78) stating "CUPP" in fact has 3 triable issues of fact, and also included in the order the possibility of award of "punitive damages". Immediately thereafter "KING" called PGE to have them reinstall the power Defendants had PGE remove on 8-4-20. PGE called "CUPP" to inform him that "KING" had called. *Again, mens rea?*

59.     PGE would not reinstate power now due to length of time and no direction in writing from Defendants. PGE representative Michael Norwitz stated to "CUPP" this sounds litigious (while reviewing history from 8-4-20) and PGE required "CUPP" get a permit from PRMD, *under now 'current building codes'*.  (Which was not a requirement before Defendants 'took' power from "CUPP" and is *a direct result of continuing damage*).

60.     "CUPP" went to PRMD and the permit tech said there was no permit application approved by PRMD for this. "CUPP" asked the permit tech to talk to "HARRINGTON", she was not available, but "FRANCESCHI" was. Permit tech went to his office and asked "FRANCESCHI" if OK to give permit to "CUPP" to reinstall power, "FRANCHECHI" stated "yes, give "CUPP" what he needs. "CUPP" was issued a permit BLD22-1409 on 2-28-22, went back to PGE who scheduled for power reinstall.

61.     Then PGE then required "CUPP" to get a second permit from PRMD for second meter, "CUPP" returned to PRMD and spoke to Permit tech again, who said again, no permit application approved on file. "CUPP" asked to have her talk to "HARRINGTON" who was in the next room talking to "KING" on the phone at that time regarding the PGE power again. The Permit tech stated to me that "HARRINGTON" talking with "KING" about my power, "KING" told "HARRINGTON" to have tech issue permit to reinstall power for second meter.

62.     On 3-3-22 Marc Bamatter of PRMD approved the meter for PGE reinstallation of permit BLD22-1501. PGE in short order came to reinstall the two meters.

63.     ***"CUPP" was without power at his property for 19 months***. The PGE gas is still not approved nor designed for installation. ***There is STILL NO GAS installed at Property***. This was done intentionally and as a pattern and practice defendants do this to punish anyone who opposes them. This is what "CUPP" stated in his application for TRO, and in fact did happen, even though ordered by Judge not to do so.

64.     On 6-1-22 again with witnesses, defendants trespassed and performed unreasonable search by again flying a "DRONE" over the property, hovering over Antonio Gonzalez Cruz, at approximately 20' away and the height of a telephone pole off the ground, while he was working on the house. Cruz took a video at the time he was accosted. This was not 'open field' or 'plain view', the "DRONE" focused on the house and Mr. Cruz while he was working on the house, at a height that the drone could look into the house bedroom and bathroom windows on the second floor.

65.     If not enjoined by the Court, defendants will continue to implement unreasonable searches and trespasses and the unlawful use of drones to violate people's expectation of privacy and the derogation of the rights of "CUPP" and other similarly situated residents. Such implementation will impose irreparable injury on "CUPP" and other persons. Plaintiff has no plain, speedy, and adequate remedy at law."

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of "CUPPS" Fourth Amendment Rights (42 U.S.C. § 1983)

### (Against All Defendants)

66.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

67.    By entering the residences (or curtilage) of "CUPPS" property without a warrant, or "CUPPS" consent, ,defendants violated the Fourth Amendment to the United States Constitution, which is a violation of 42 U.S.C. § 1983.

68.    As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur, general and special damages in an amount to be proven at trial.

69.    At all relevant times herein, Defendants actions, as complained of herein, were committed maliciously, oppressively, and in reckless disregard of "CUPPS" constitutional rights; were done willfully, in bad faith, wantonly, and with an evil motive or purpose designed to vex, injure, or annoy; were done in concert with other Defendants, including Defendant "DOES".

70.    The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by Defendants in unconstitutionally performing unreasonable searches and trespassing with "DRONES"; and using abuse of power and fraudulent conspiracy to control or manipulate citizens and landowners by having the Courts to issue inspection warrants, using deceitful Affidavits of Probable Cause and exhibits to have Judges (not knowing all the facts) issue these warrants giving defendants the ability to violate citizens' rights.

71.    All of the defendants are sued in their official and individual capacities.

## SECOND CAUSE OF ACTION

**Violation of "CUPPS" Fourteenth Amendment Rights (42 U.S.C. § 1983)**

**(Against All Defendants)**

72.     "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

73.     By entering the residences (or curtilage) of "CUPPS" property without a warrant, defendants violated the Fourteenth Amendment to the United States Constitution, which is a violation of 42 U.S.C. § 1983.

74.     As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur, general and special damages in an amount to be proven at trial.

75.     At all relevant times herein, Defendants actions, as complained of herein, were committed maliciously, oppressively, and in reckless disregard of "CUPPS" constitutional rights; were done willfully, in bad faith, wantonly, and with an evil motive or purpose designed to vex, injure, or annoy; were done in concert with other Defendants, including Defendant "DOES".

76.     The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by defendants in unconstitutionally performing unreasonable searches and trespassing with "DRONES"; and using abuse of power and fraudulent conspiracy to control or manipulate citizens and landowners by having the Courts to issue inspection warrants, using deceitful Affidavits of Probable Cause and exhibits to have Judges (not knowing all the facts) issue these warrants giving defendants the ability to violate citizens' rights.

77.     All of the defendants are sued in their official and individual capacities.

### THIRD CAUSE OF ACTION

**Conspiracy to Violate 'CUPPS" Fourth Amendment Rights (42 U.S.C. § 1983)**

**(Against All Defendants)**

78.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

79.    Defendants conspired with each other to violate the civil rights of "CUPP", in particular,the Fourth Amendment right to a warrant prior to a search and seizure.

80.    Defendants "WICK", "HARRINGTON", "HOFFMAN" designed the hidden procedure and had and continue to have "SMITH" and other PRMD Code Enforcement Officers and well as "CINQUINI" and "CINQUINI & PASSARINO" effectuate the unconstitutional search and seizures without any legal authority to do so. They stay 'hidden from the public'.

81.    Defendant "HARRINGTON" attempts to 'legalize it on its face' by her creation of County Code for "DRONES" , 7-0 Standard Operating Procedures on the Use of Unmanned Aircraft Systems (UAS) 9-22-17 approved by "WICK", her boss and department head and reviewed by County Counsel.

82.    "COUNTY" does not have the authority to promulgate Policies, Procedures or Contracts authorizing Nonconsensual Inspections of Private Property Absent an Administrative warrant. Article 11, Section 7 of the California Constitution and Government Code section 37100 prohibit the enactment of municipal laws that conflict with the general laws of the State.

83.    By conspiring to unreasonably search, enter residences or curtilage of "CUPPS" property without a proper warrant, or advance notice or an opportunity for a hearing, defendants violated the Fourteenth Amendment to the United State Constitution, which is a violation of 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Conspiracy to Violate 'CUPPS" Fourteenth Amendment Rights (42 U.S.C. § 1983)

### (Against All Defendants)

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS, AND STATE LAW VIOLATIONS

84.     "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

85.     Defendants conspired with each other to violate the civil rights of "CUPP", in particular, the Fourteenth Amendment right to due process.

86.     Defendants "WICK", "HARRINGTON", "HOFFMAN" designed the hidden procedure and had and continue to have "SMITH" and other PRMD Code Enforcement Officers and well as "CINQUINI" and "CINQUINI & PASSARINO" effectuate the unconstitutional search and seizures without any legal authority to do so. They stay 'hidden from the public'.

87.     "COUNTY" does not have the authority to promulgate Policies, Procedures or Contracts authorizing Nonconsensual Inspections of Private Property Absent an Administrative warrant. Article 11, Section 7 of the California Constitution and Government Code section 37100 prohibit the enactment of municipal laws that conflict with the general laws of the State.

88.     Defendant "HARRINGTON" designed this County 'Drone" plan, "WICK" approved it, and "COUNTY" by and through County Counsel ratified it.

89.     Defendants "HARRINGTON", "HOFFMAN", "SMITH" executed this unconstitutional plan in their capacity as the PRMD Code Enforcement Officers for "COUNTY".

90.     Defendants "HARRINGTON", "HOFFMAN", "SMITH", "CINQUINI" and "CINQUINI & PASSARINO" were personally present at these unconstitutional searches and raids.

91.     By conspiring to unreasonably search, enter residences or curtilage of "CUPPS" property without a proper warrant, or advance notice or an opportunity for a hearing, defendants

violated the Fourteenth Amendment to the United State Constitution, which is a violation of 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION

### Violation of California Constitution article 1, section 7

### (Against All Defendants)

92.     "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

93.     Article 1, section 7 of the California Constitution prohibits the deprivation of property without advance notice and the opportunity for a hearing.

94.     By entering the curtilage of "CUPPS" property, searching with "DRONES" and having PGE remove the electrical and gas meters without notice or a hearing violated article 1, section 7 of the California Constitution.

95.     As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries, and continues to incur, general and special damages in an amount to be proven at trial.

96.     The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by the defendants tantamount to a custom, policy or practice of the PRMD and Code Enforcement condoning and tacitly encouraging the disregard for the constitutional rights of "CUPP" and Sonoma County citizens, as described herein.

97.     Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

98.     Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

## SIXTH CAUSE OF ACTION

### Violation of California Constitution article 1, section 13

### (Against All Defendants)

99.     "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

100.    Article 1, section 13 of the California Constitution prohibits warrantless searches and seizures on property, or against the property owned by "CUPP".

101.    By entering the residence or curtilage of "CUPPS" property without a warrant, defendants violated California Constitution, article 1, section 13.

102.    As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur, general and special damages in an amount to be proven at trial.

103.    The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by the defendants tantamount to a custom, policy or practice of the agencies of condoning and tacitly encouraging the disregard for the constitutional rights of "CUPP" and Sonoma County citizens, as described herein.

104.    Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

105.    Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

## SEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1

### (Against All Defendants)

106.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

107.    Article 1, sections 7 and 13 of the California Constitution prohibit the warrantless searches and seizures of property without due process.  So, too, do the Fourth and Fourteenth Amendments to the Unites States Constitution.

108.    By performing warrantless "DRONE" searches of residences or breaching the curtilage of "CUPPS" property without a warrant or any advance notice or opportunity for a hearing, and damaging "CUPPS" property, under the threat of authority by law enforcement, in this case PRMD Code Enforcement, defendants interfered with, and attempted to interfere by threats, intimidation, and coercion, with "CUPPS" peaceable exercise of the rights secured to him by the federal and state constitutions, in violation of the Bane Civil Rights Act, Cal. Civil Code § 52.1.

109.    The same as when "HARRINGTON, "HOFFMAN", "SMITH" and others performed the raid (July 30, 2020 inspection warrant) where "COUNTY" got authority from the Superior Court by looking at "HOFFMANS" tainted or biased affidavit of probable cause and showing the Judge the Exhibits E-1 & E-2 which were "DRONE" pictures, but represented to the Judge they were Google Earth photos, and not from a warrantless search.

110.    As a direct and proximate result of defendant's illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur general and special damages in an amount to be proven at trial.

111.    The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by the defendants tantamount to a custom, policy or practice of the agencies of condoning and tacitly encouraging the disregard for the constitutional rights of "CUPP" and Sonoma County citizens, as described herein.

112.    Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

113.    Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

**EIGHTH CAUSE OF ACTION**

**Conspiracy to Violate California Civil Code § 52.1**

**(Against All Defendants)**

114.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

115.    Article 1, sections 7 and 13 of the California Constitution prohibit the warrantless searches and seizures of property without due process. So, too, do the Fourth and Fourteenth Amendments to the United States Constitution.

116.    By conspiring to enter the residence (or curtilage) of "CUPPS" property without a warrant or any advance notice or opportunity for a hearing, and damaging his property, under the threat of authority by law enforcement, in this case PRMD Code Enforcement, defendants interfered with, and attempted to interfere by threats, intimidation, and coercion, with "CUPPS"

peaceable exercise of the rights secured to him by the federal and state constitutions, in violation of the Bane Civil Rights Act, Cal. Civil Code § 52.1.

117.    As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur general and special damages in an amount to be proven at trial.

118.    The acts and omissions alleged in this Complaint are indicative and representative of a repeated course of conduct by the defendants tantamount to a custom, policy or practice of the agencies of condoning and tacitly encouraging the disregard for the constitution rights of "CUPP" and Sonoma County citizens, as described herein.

119.    Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

120.    Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

## NINTH CAUSE OF ACTION

### Conversion under California Law

### (Against All Defendants)

121.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

122.    "CUPP" legally owned and possessed his property under California Law.

123.    On or about 7-30-20 defendants "HARRINGTON", "HOFFMAN", "SMITH" and others representing "COUNTY", entered "CUPPS" property with a 'bogus' inspection warrant based on "HOFFMANs" tainted Affidavit of Probable cause that included "DRONE" photos from another warrantless search of "CUPPS" property months before.  "HOFFMAN" represents

to the Superior Court Judge that the Images (photos) are from Google Earth, misleading her to get the inspection warrant signed.

124. "HARRINGTON" called "CUPP" on 7-30-20 on his cell and said she/they were executing a Inspection Warrant. "CUPP" stated he was at work, "HARRINGTON" replied, it did not matter, they were going in anyway. "CUPP" did not voluntarily consent to this.

125. Previous to this (as noted above) the Honorable Hamilton in the existing case CV 20-03456 directed "COUNTY" not to terminate PGE service to "CUPP" or his property.

126. On 8-4-20 PGE under direction from "COUNTY" came out to "CUPPS" property and removed both electrical meters and gas meter. "CUPP" was without power for 19 months and is still without gas service. "KING" would not authorize PGE to restore power, even though he was aware of Judge Hamilton's ORDER. It was only when Judge Hamilton ruled on defendants Motion for Summary Judgement and decided "CUPP" had 3 triable issues of fact and could be awarded punitive damages that "KING" immediately called PGE to restore the power.

127. Defendants' actions were without right or justification and constitutes the conversion of "CUPPS" property under the common law of the State of California.

128. Defendants acted maliciously and in bad faith in that they knew or should have known that their actions were wrongful.

129. As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages.

130. Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

131. Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

# TENTH CAUSE OF ACTION

## A Taking under Federal Law

## (Against All Defendants)

132.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

133.    "CUPP" legally owned and possessed his property under California Law.

134.    On or about 7-30-20 defendants "HARRINGTON", "HOFFMAN", "SMITH" and others representing "COUNTY", entered "CUPPS" property with a 'bogus' inspection warrant based on "HOFFMANs" tainted Affidavit of Probable cause that included "DRONE" photos from another warrantless search of "CUPPS" property months before.  "HOFFMAN" represents to the Superior Court Judge that the Images (photos) are from Google Earth, misleading her to get the inspection warrant signed.

135.    "HARRINGTON" called "CUPP" on 7-30-20 on his cell and said she/they were executing a Inspection Warrant. "CUPP" stated he was at work, "HARRINGTON" replied, it did not matter, they were going in anyway. "CUPP" did not voluntarily consent to this.

136.    Previous to this (as noted above) the Honorable Hamilton in the existing case CV 20-03456 directed "COUNTY" not to terminate PGE service to "CUPP" or his property.

137.    On 8-4-20 PGE under direction from "COUNTY" came out to "CUPPS" property and removed both electrical meters and gas meter. "CUPP" was without power for 19 months and is still without gas service. "KING" would not authorize PGE to restore power, even though he was aware of Judge Hamilton's ORDER. It was only when Judge Hamilton ruled on defendants Motion for Summary Judgement and decided "CUPP" had 3 triable issues of fact and could be awarded punitive damages that "KING" immediately called PGE to restore the power.

138.   Defendants' actions were without right or justification and constitutes the taking of "CUPPS" property under the common law of the State of California.

139.   Defendants acted maliciously and in bad faith in that they knew or should have known that their actions were wrongful.

140.   As a direct and proximate result of defendants' illegal conduct, "CUPP" suffered actual injuries and damages, and continues to incur general and special damages in an amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**

**Trespass under California Law**

**(Against All Defendants)**

141.   "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

142.   "CUPP" legally possessed the property at the time of defendant's trespass(s).

143.   There are four times that " CUPP" knows about, (maybe more), the original trespass by "SMITH" in February 2019, the "DRONE" incident that produced the Exhibits in "HOFFMANS" Affidavit of Probable cause March 2020, the 'raid' when "COUNTY" and related defendants physically entered the property and broke doors with their 'inspection warrant' on 7-30-20, and the 6-1-22 that just occurred.

144.   Defendants entry upon the curtilage of "CUPPS" homes and airspace was not authorized, consented to, welcome, or lawful.

145.   Lets be clear, since the first trespass by "SMITH" 2-15-19, all defendants including "COUNTY" (except "CINQUINI and "CINQUINI & PASSARINO"), knew or should have known that "CUPP" would not allow any trespass or authorize any entry by "COUNTY".

Prior to that, for several years, "CUPP" has written and posted approximately 14 times of 'NO TRESPASSING' to "COUNTY" through risk management or Board of Supervisors.

146. As a direct and proximate result of defendants' illegal conduct, 'CUPP" suffered actual injuries and damages, and continues to incur general and special damages in an amount to be determined at trial.

147. At all relevant times herein, Defendant's actions, as complained of herein, were committed maliciously, oppressively, and in reckless disregard or "CUPPs" constitutional rights; were done willfully, in bad faith, wantonly, and with an evil motive or purpose designed to vex, injure, or annoy; were done in concert with other Defendants, including 'WICK" who is in charge of the whole department, and DOES 1-20, demonstrating a deliberate indifference to "CUPPS" constitutional and statutory rights, sufficient for an award of punitive/exemplary damages against Defendants, in an amount to be proven at trial.

148. Under California Government Code § 820(a), the individual officer defendants are liable for damages for their own misconduct.

149. Under California Government Code § 815.2(a), the public entity employer is vicariously liable for conduct performed within the scope and course of their employment.

## TWELFTH CAUSE OF ACTION

### Agency Liability – Unconstitutional Official or De Facto Policy, Practice, or Custom in Violation of 42 U.S.C. § 1983 (MONELL)

### (Against Defendant COUNTY)

150. "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

151.   "CUPP" is informed and believes that Defendant "COUNTY" exercises de facto policies that are contrary to its constitutional requirements. Defendant "COUNTY" is ultimately responsible due to customs, policies, and practices of its officers, agents, and employees; whom they employ, train, supervise, oversee, discipline, reward, or ratify.

152.   At all times relevant herein, "CUPP" had a reasonable expectation that Defendants would not violate his Fourth Amendment protections and search the subject land without a warrant or take his property without legal justification.

153.   "CUPP" is informed and believes and thereon alleges that, at all times mentioned herein, Defendant "COUNTY", with deliberate indifference, and in conscious disregard of the security and constitutional rights of "CUPP" and others, including the right to be free from warrantless searches under the Fourth Amendment, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among other, the follow customs, policies and practices:

a.   Failing to adequately train, supervise, and discipline its Code Inspectors, especially the Code Enforcement Officers including Defendants "HARRINGTON", "HOFFMAN", "SMITH" (who are all ex-police officers) and others;

b.   Failing to discourage, or actively encouraging, the unlawful use of authority of the PRMD, and Code Enforcement Officers, or its officers, and its agents, including the named Defendants herein and DOES 1-20;

c.   Failing to admonish, reprimand, discipline, or even investigate constitutional or statutory rights violations by its Code Inspectors, and Code Enforcement Officers, including the named Defendants herein and DOES 1-20;

d.   Ratifying the violations of clearly established constitutional protections, including those conferred by the Fourth Amendment, by directing, encouraging, or rewarding Code Inspectors/Code Enforcement Officers and others, including the named Defendants herein and DOES 1-20, in conducting warrantless searches of private property, including but not limited to the subject land, and unlawfully taking property.

e.    Failing to implement proper procedures for obtaining inspection warrants, keeping track of when inspection warrants are sought, executing such warrants; and applying to judicial officers for orders regarding inspection warrants, including the falsification of court records and other documents to justify the otherwise unlawful and unconstitutional behavior of its Code Inspectors, Code Enforcement Officers, and other agents, including the named Defendants herein and DOES 1-20;

f.    Maintaining a custom, policy, or practice of routinely violating, or encouraging the violation of, the Fourth Amendment rights of landowners in Defendant "COUNTY" by searching their private property without warrants or other legal justification in a scheme to illicitly raise revenue for Defendant "COUNTY" and, thus, unfairly penalize landowners in Defendant "COUNTY".

154.    At all relevant times herein, all individual Defendants named herein as well as DOES 1-20 were acting pursuant to customs, policies, and practices of Defendant "COUNTY" and its agency, PRMD, especially the Code Enforcement Officers who, under "WICK", managed by "HARRINGTON" and "HOFFMAN" appear to have a custom and practice of:

a.    Performing unwarranted "DRONE" searches of citizens property 'because they want to for fishing expeditions, without public knowledge, by Code Enforcement Officers.

b.    These unwarranted "DRONE" searches are done in private and secrecy, by Defendant "CINQUINI", who to "CUPPS" information and belief was not hired by "COUNTY" with public competitive bidding.

c.    Using video/pictures from these unlawful searches as part of their Affidavit of Probable Cause presented to Judicial Officers in obtaining inspection warrants.

d.    Misleading Judicial Officers that the pictures from the unwarranted and unlawful "DRONE" searches are part of Google Earth images, without telling the Judicial Officers that these Code Enforcement Officers had the pictures taken (by a private contractor in secrecy) without any permission, authorization, or exigent circumstances of the citizens, and have

grouped the "DRONE" photos in with the Google Earth images, in order to obtain the inspection warrants from these Judicial Officers.

e. Custom, policy, pattern, and practice and with knowledge of all the Defendants who are conspiring, that the Affidavit or Probable cause is a cut and paste job, say the same untrue facts while inserting the "DRONE" photos to intentionally mislead the Judicial Officer.

f. Immediately closing out Sonoma County Superior Court cases opened for Inspection warrant purposes, closed out so they cannot be challenged for Defendants wrongdoings. +

g. Knowing and allowing defendant "FRANCESCHI" to operate without an oath of office.

h. Removing the availability of due process ("HARRINGTON" removed this step) of a possibility of a citation and having PRMD officers begin writing citations and/or filing Notice of Abatement Liens and recording them on landowners property to get them to comply with PRMD wishes.

155.   At all relevant times herein, all individual Defendants named herein as well as DOES 1-20 were acting pursuant to the customs, policies, and practices of Defendant "COUNTY" and its agency, PRMD, in this case Code Enforcement Division.

156.   As a direct ad proximate result of the acts and omissions complained of herein, "CUPP" has sustained, and continues to sustain, general and special damages in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION

### Trespass and Invasion of Privacy § Civil Code 1708.8

### (Against Defendants "CINQUINI" AND "CINQUINI & PASSARINO")

157.   "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

158.    Defendants "CINQUINI" AND "CINQUINI & PASSARINO" intentionally violated "CUPPS" reasonable expectation of privacy, his private affairs,  and performed physical trespass and intentional invasion into "CUPPS" property by crossing his curtilage with electronic or optical intrusion equipment, using zoom lenses or highly sensitive microphones to photograph or record  "CUPP" and/or his property.

159.    "CUPP" has a reasonable expectation of privacy.

160.    These actions of intrusion upon seclusion are highly offensive to "CUPP" and would be to any reasonable person. And these actions were done for profit. "CUPP" has taken great lengths to protect his property by fencing on all four property sides with tall solid fencing at the street sides, to which the Federal Court has recognized "CUPP" has taken great lengths to be in private and the court has recognized his curtilage in current court case.

161.    Upon "CUPPS" learning defendants "CINQUINI" AND "CINQUINI & PASSARINO" were secretly flying over a "DRONE" for profit by selling images of "CUPPS" private property, without consent or permission and without "CUPPS" knowledge. The actions of these defendants has caused mental anguish and suffering to "CUPP" in the form of surprise, fright and anger at the loss of his privacy. "CUPP" did not immediately find out until such time as it was discovered as evidence in a court case.

## REQUEST FOR DECLARATORY RELIEF

162.    "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

163.    An actual case or controversy has arisen and now exists between "CUPP" and Defendants, and each of them, concerning their respective rights and duties in that "CUPP"

contends that his Fourth and Fourteenth Amendment rights under the U.S. Constitution, as well as statutory and common law rights, have been violated.

164.    Plaintiff desires a judicial determination of those rights and his duties with respect to Defendants, and each of them.

165.    A judicial declaration is necessary and proper at this time under the circumstances alleged herein in order that "CUPP" may know his rights and duties with respect to:

a.  Any information obtained by "HOFFMAN" from use of fraudulent or misleading Affidavits of Probable Cause to Judicial Officers to obtain Inspection Warrants against "CUPP" is tainted and suspect and will be suppressed.

b.  The abatement hearing re: "CUPPS" property Dec 2020 and Jan 2021, where it was run by "FRANCESCHI" without an Oath of Office (not in compliance with all constitutions and Government Codes), knowing so by "COUNTY" and all other Supervisors and Superiors, using tainted evidence obtained by "HOFFMAN" after unlawfully having a "DRONE" fly over his property and taking pictures "HOFFMAN" then used to fool a Judicial Officer misleading her that the images were part of Google Earth and not informing her that he obtained the pictures from unwarranted search fly over of "CUPPS" property.

c.  From this hearing the county has penalties assessed by Defendant "COUNTY", which now burden "CUPP" and the subject land.

166.    Monetary damages will not suffice to provide "CUPP" with an adequate remedy because Defendant "COUNTY" is assessing per diem penalties against "CUPP" and the subject land, which arose out of an unlawful search in violation of the Fourth and Fourteenth Amendment, trespass, and the subsequent actions by "COUNTY" as alleged herein.

## REQUEST FOR INJUNCTIVE RELIEF

167.   "CUPP" realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully alleged herein.

168.   **This is probably most important to "CUPP" as much as the damages** that Defendants have caused me. Yes, silly "CUPP" is a 'constitutionalist' who fully believes in property rights and being left alone. "CUPP" is not anti-police nor anti-government **BUT IS anti-corrupt police and anti-corrupt government.**

169.   "CUPP" is a firm believer, as stated above, that just because new technology is available, it should not be used to violate the rights of citizens, just because government can. This is the case with "DRONES" being used by government, *because it can*, to violate people's privacy and property rights.

170.   Our Supremes have ruled that people have no expectation of privacy from fixed wing aircraft at 1000 ft, same for helicopters at 400 ft.; and that if up there and they by chance happen to see something, it is OK. They cannot unsee what they may have witnessed with their own two eyes (camera's telephoto lenses etc.). I am OK with that.

171.   But "DRONES" are not that, as stated above it is new technology, it can hover, have telephoto lenses, camera, video capability, infra red capabilities, and so on.

172.   It is no mans land from the ground to 400 ft, which 400 ft and above is defined as navigable air space controlled by FAA.  There is no legal definition of this Wild West space, because it is not just used to see 'open space' or what is in 'plain view'. Read the Exhibit A of this complaint with the experiences from normal people. They flew the "DRONE" with impunity and not caring for citizens fears, rights or so on. Again, who is there to stop them? We are, here and now. We are not talking 'open field' or 'plain view' here.

173.     I am not asking the Court to define this 400 ft battlefield, that will come later by someone else. What I am asking THIS COURT TO DO is issue a temporary restraining order for this "COUNTY" not to fly any "DRONE" or similar technology over my or another citizens property without a valid warrant, whether it be search or inspection warrant.

174.     I am not talking about a kid buying a "DRONE" from Walmart and checking to see what the neighbor is doing, I am talking about Government actors with specific ***INTENT***.

175.     If our Supremes can justify in Florida v. Jardines (2013) 569 U.S. 1 that the ***INTENT*** of government to bring a drug dog to a house curtilage and see if anything is up, ***IS NOT OK***, and as simple as Taylor v. City of Saginaw (6th Cir. 2019) 922 F.3d 328 where the ***INTENT*** of government to chalk tires for a ticket are a 4th amendment violation and unreasonable search, how can this "COUNTY" government hire someone in private (no public bidding), trespass and perform an unwarranted unreasonable search of someone's house and land, take pictures/videos, without homeowners or landowners knowledge, and use these documents in an Affidavit of Probable Cause for a warrant, mislead the judge like they are part of Google Earth images and not let Judicial Officer  know they were obtained without a warrant.

176.     I think that is outrageous and as you say in legal terminology, 'fruit of the poisonous tree' from what they take, not counting 'someone should be tar and feathered'. And if you need to experience this, as I said above, give me your address . . . I will send you some pictures (or maybe not – as you don't have to know that I was there, even though you feel 'safe' in your backyard).

177.     Again, it is the ***INTENT.***  If it was or is OK, why doesn't government just tell the Judicial Officer that they 'flew a "DRONE" over someone's house or property, without a

warrant, and this is what they found. And can they obtain a warrant to "do it lawful this time?" Mens rea?

178.    As I have stated above, our Supremes have already told government what to do and how, in Camara v. Municipal Court (1967) 387 U.S. 523 (they have 55 years to get this down), which has such a low threshold for government to overcome that it is almost impossible NOT TO GET AN INSPECTION WARRANT, if they have any probable cause. Like when they say a grand jury can indict a ham sandwich.

179.    I am requesting a temporary restraining order and preliminary and permanent injunction, enjoining the defendants and their agents and employees from entering the private property or airspace from ground to 400 ft, by 'DRONE" or similar technology, without a meaningful hearing or valid warrant.

## JURY TRIAL

Jury trial by jury of my peers demanded.

## PRAYER FOR RELIEF

**WHEREFORE,** "CUPP" seeks the following relief:

1.  A declaration that defendants' actions are unlawful and unconstitutional as listed above;

2.  A declaration that information obtained by "HOFFMAN" by misleading Judicial Officers to obtain Inspection Warrants will be supressed.

3.  A declaration that "CUPPS" abatement hearing held with a "COUNTY" government employee without an Oath, and the evidence used and seized by unreasonable search and deceiving Judicial Officer to obtain an Inspection Warrant is invalid and unlawful;

4.  A temporary restraining order and preliminary and permanent injunction, enjoining the defendants and their agents and employees from flying a "DRONE" over any "CUPPS" or citizens property, land, house, **without first obtaining a valid warrant from a Judicial Officer;**

5.  General and Special damages and Punitive damages, according to proof at trial;

6.  Treble damages for each violation of the Bane Civil Rights Act;

7.  Costs and attorneys' fees incurred in this action; and

8.  Such other and further relief as this Court may be just and proper.

Dated: July 24, 2022,                              Respectfully;

                                                  /s/ RONALD CUPP

                                                  Ronald Cupp,  Plaintiff Pro Se

## **VERIFICATION**

Declaration of Ronald Cupp

I, Ronald Cupp, a man aggrieved, "Declarant" one of the people of California, in this court of record, sound of mind and competent to testify, hereinafter "Cupp" declares on personal knowledge, information and belief, the following facts:

1.  I have read the foregoing pleading and know the facts therein stated to be true and correct.

2.  I declare, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information and belief.

Date:   July 24, 2022

                                                  /s/ RONALD CUPP

                                                  Ronald Cupp, Plaintiff Pro Se